Charles N. CONE and American-Marietta Company, Plaintiffs,

v.

Robert C. WATSON, Commissioner of Patents, Defendant.

No. 505-57.

United States District Court
District of Columbia.

Jan. 14, 1959.

Ivan P. Tashof, Washington, D. C., Max Dressler, Chicago, Ill., Ford E. Smith, Seattle, Wash., for plaintiffs.

Clarence W. Moore, Arthur H. Behrens, Washington, D. C., for defendant.

HART, District Judge.

This Cause having come on for trial on December 10 and 11, 1958, and the parties having appeared by counsel and the Court having heard the testimony of Henry W. Haigh, Havard L. Keil, Ph.D., and Arthur Livermore, Ph.D., and having considered all the evidence, makes the following

Findings of Fact

I.

Plaintiff, Charles N. Cone, the applicant for patent herein, is a resident of Portland, Oregon. Plaintiff, American-Marietta Company, is an Illinois corporation having its principal place of business at 101 East Ontario Street, Chicago, Illinois. Defendant, Robert C. Watson, is United States Commissioner of Patents whose official residence is in the City of Washington, District of Columbia.

II.

Prior to April 7, 1950, Charles N. Cone made an invention pertaining to a blood glue and processes of making the blood glue. On April 7, 1950, Charles N. Cone

duly filed an application for Letters Patent on said invention in the United States Patent Office. Said application was made and filed in accordance with the laws of the United States and Rules of Practice of the United States Patent Office and was assigned Serial No. 154,-717.

### III.

Thereafter, on October 13, 1954, the said Charles N. Cone filed an application for Letters Patent in the United States Patent Office in accordance with the laws of the United States and the Rules of Practice of the United States Patent Office, Serial No. 461,947, as a continuation in-part of the said application Serial No. 154,717.

### IV.

The entire right, title and interest in and to said applications Serial Nos. 154,-717 and 461,947, and the inventions described therein, were duly assigned by Charles N. Cone to the United States Plywood Corporation, a corporation of New York, the same later being assigned by United States Plywood Corporation to American-Marietta Company, a corporation of Illinois.

### V.

Said applications were duly prosecuted in the United States Patent Office in accordance with the laws of the United States and the Rules of Practice of the United States Patent Office. Said application Serial No. 154,717, but not the invention disclosed therein, was abandoned subsequent to the filing of said application Serial No. 461,947, and the said invention was preserved and prosecuted in Serial No. 461,947.

### VI.

In application Serial No. 461,947 various claims on the invention, namely, claims 1–8, 11–17, 19, 25, 27 and 28 were allowed by the Primary Examiner. Certain other claims, namely, Claims 9, 10, 18 and 26 were rejected and the rejection of these claims was subsequently affirmed by the Patent Office Board of Appeals. These claims were thus refused plaintiffs.

These claims are as follows:

9. The process of making glue which comprises providing an aqueous blood material selected from the group consisting of fresh blood, an aqueous solution of soluble dried blood and mixtures thereof, the blood solids and water in said material varying from about 1:3 to 1:10, respectively, on a weight basis, coagulating the blood in said material while agitating it for maintaining the coagulated blood particles in finely divided condition and dispersed throughout the aqueous medium, and improving the adhesive qualities of the coagulated blood dispersion and rendering it alkaline by admixing therewith while the same is at a temperature below about 120° F. an adhesive conditioner comprising an alkali metal caustic.

10. The glue product of the process of claim 26.

18. The process of making a glue which comprises providing an aqueous blood material selected from the group consisting of fresh blood, an aqueous solution of soluble dried blood and mixtures thereof, coagulating the blood in said material by intimately admixing with the said material an acid blood-coagulating agent while agitating it for maintaining the coagulated blood particles in finely divided condition and dispersed throughout the aqueous medium, and improving the adhesive qualities of the coagulated blood dispersion and rendering it alkaline by admixing therewith while the same is at a temperature below about 120° F. an adhesive conditioner comprising an alkali metal caustic, the water and blood being present after the admixing in the relative proportions of from about 1 part of blood solids to about 3 to 10 parts water, parts being expressed as parts by weight.

26. The process of making glue which comprises providing an aque-

ous blood material selected from the group consisting of fresh blood, an aqueous solution of soluble dried blood and mixtures thereof, the blood solids and water in said material varying from about 1:3 to 1:10, respectively, on a weight basis, converting said aqueous blood material into an aqueous suspension of coagulated blood particles selected from the group consisting of blood particles heat-coagulated at a temperature between about 120° F. and the boiling point of the aqueous blood material, and acid-coagulated blood particles, by coagulating the blood in said initially prepared aqueous blood material while agitating it for maintaining the coagulated blood particles in finely divided condition and dispersed throughout the aqueous medium; and improving the adhesive qualities of the coagulated blood dispersion and rendering it alkaline by admixing therewith while the same is at a temperature below about 120° F. an adhesive conditioner comprising an alkali metal caustic.

## VII.

This suit was brought pursuant to Title 35, Sec. 145, U.S.C., by the plaintiffs seeking a determination that they are entitled to receive a patent on the invention defined in each of the aforesaid claims 9, 10, 18 and 26, and seeking a determination by this Court of the authority of the Commissioner of Patents to issue a patent containing said claims to plaintiffs.

## VIII.

The claimed invention is primarily directed to the coagulation of an aqueous blood material while the same is being agitated to provide a finely divided coagulated blood material in aqueous medium, and to the addition, at a temperature below about 120° F., to the coagulated blood material of one or more conditioning chemical to render the same alkaline, thereby to produce an improved blood glue which has very desirable properties, particularly when used in the plywood industry.

## IX.

The blood glues of the invention have a fine uniform consistency and superior spreading properties over a wide viscosity range; they are stable in the presence of additives and have a high tolerance for phenol-aldehyde resins and coact therewith to produce superior glues; they do not dry out rapidly or penetrate excessively into wood surfaces to which they are applied, thus affording the plywood manufacturers a long assembly time, a feature which is important; and these glues are useful in plywood manufacture under cold pressing as well as hot pressing conditions.

## X.

The invention has received wide acceptance in commerce and in the plywood field.

## XI.

The reference patents and publication cited by the United States Patent Office upon which the rejection of claims 9, 10, 18 and 26 are based, is: Keil et al. Patent 2,466,710, Cone Patent 1,976,436, Hawk "Practical Physiological Chemistry" 1947 (pages 422, 423). These references and Cone Patent 2,400,541 and the publication "Modern Wood Adhesives" by Thomas D. Perry (1944), which were presented to the Court and relied upon by defendant, were fully discussed by the witnesses and fully considered by the Court.

## XII.

The Keil et al. patent discloses various processes for treating whole blood to produce therefrom a light colored, dry proteinaceous material suitable for use as a substitute for the light albumin product of commerce.

## XIII.

The light albumin product of commerce is a dry, water soluble and heat coagulable albumin material which is used for finishing leather, treating textiles, and for clarification of chemicals, including beverages.

### XIV.

The Keil et al. process is based upon the treatment of a whole blood material, specifically "floor blood", to obtain therefrom a light colored protein product. In accordance with the disclosure of the Keil et al. patent, floor blood is initially treated with acidic materials, or with alkali, or by heating, or by the combination of heating in the presence of an acidic material or by heating in the presence of alkali, to dissociate the hemoglobin of the floor blood into heme and globin. The materials resulting from these several treatments are not coagulated. They are merely intermediate and transitory materials.

### XV.

In the Keil et al. process, the intermediate materials are treated as rapidly as they are produced with a bleaching material, specifically a peroxide, and in the event the pH of the bleached material is either acid or alkaline, the bleached material is promptly neutralized to a pH of about 7, and then dried to produce a water soluble heat coagulable protein material suitable as a substitute for the light albumin of commerce.

### XVI.

In the Keil et al. processes the treatment of the dissociated heme and globin to bleach the same oxidizes the dissociated blood components and effects a chemical alteration thereof.

### XVII.

The Keil et al. processes contemplate only the treatment of the bleached blood materials to render them neutral, and not to render the same alkaline as in the plaintiffs' claimed processes.

### XVIII.

Coagulation of blood materials is completely foreign to the Keil et al. invention as described in the aforesaid Keil et al. patent, and Dr. Keil, one of the joint patentees of Keil et al. patent No. 2,466,710, testified to that effect. Also, Dr. Livermore testified that the Keil et al. patent does not disclose conditions for effecting coagulation of whole blood material.

### XIX.

Defendant's assertion that the Keil et al. materials, in either the intermediate and transitory state or in the final state, is a coagulated blood material, is a misconstruction of the Keil et al. patent, and does violence to the language and the clear import of the same.

### XX.

Keil et al. do not disclose the production of any glue, let alone the production of the glue of plaintiffs' claimed invention.

### XXI.

Cone patent No. 1,976,436 represents the plaintiff's Cone's early effort in the field of making glues from blood material. The patent is directed to the production of a plywood glue. The blood glue of this patent which was intended for use in the plywood industry but is not now used, involves alkalizing an uncoagulated soluble blood material and represents the plaintiff Cone's early effort in the field of making glues from blood materials. The patent does not disclose plaintiffs' invention here.

### XXII.

Cone patent No. 2,400,541 is directed to the production of a plywood glue and involves the "conversion" of fertilizer blood, an insoluble blood material, with caustic alkali in hot aqueous medium at substantially elevated temperatures for protracted periods of time. The "converted" material is cooled and an addition of alkaline conditioning chemicals is thereafter made. The blood glue of this patent was used in the plywood industry but is not now used. It does not disclose plaintiffs' invention here.

### XXIII.

The Hawk reference publication relied upon by defendant does not disclose that coagulation takes place when hemoglobin is dissociated. It does not support defendant's assertion that coagulation is inherent in the acidic dissociation step of the Keil et al. patent. The Patent Examiner and Board of Appeals erroneous-

ly construed said references and erroneously interpreted the same as disclosing or suggesting the coagulation of a blood material.

## XXIV.

The Perry "Modern Wood Adhesives" publication is on no better footing as a reference than the Cone patent No. 1,-976,436. It does not disclose plaintiffs' invention here.

## XXV.

The several prior art references relied upon by the Patent Office, namely, Keil et al. patent No. 2,466,710, Cone patent No. 1,976,436, Cone patent No. 2,400,541, and the aforesaid Hawk and Modern Wood Adhesives publication references, taken separately or in any combination, do not disclose plaintiffs' invention, nor do they suggest the same.

## XXVI.

In fact, it is also improper to combine the teachings of the glue art references, namely, the Cone patents and the Modern Wood Adhesives publication, with the teachings of the Keil et al. patent since the latter relates to an art which is non-analogous to the glue art.

## XXVII.

A person skilled in the art of glue making, having before him the prior art references relied upon by the United States Patent Office, could not, without the exercise of invention, make the invention set forth in claims 9, 10, 18 and 26

## XXVIII.

The differences between the subject matter sought by plaintiffs to be patented and the prior art are such the subject matter as a whole would have been unobvious at the time the invention was made to a person skilled in the art of glue making.

## XXIX.

The invention claimed in claims 9, 10, 18 and 26 has filled a long felt need in the art of glue making, particularly plywood glues, and is clearly patentable according to law.

Predicated upon the foregoing Findings of Fact, the Court makes the following

## Conclusions of Law

### I.

The Court has jurisdiction over the subject matter of the action and over the parties to the action.

### II.

Plaintiffs are entitled to have Letters Patent granted for the invention in claims 9, 10, 18 and 26 of said application Serial No. 461,947.

### III.

The Commissioner of Patents has the authority to issue Letters Patent containing plaintiffs' claims 9, 10, 18 and 26.